

FILED

DEC 16 2022

Clerk, U.S. District and
Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 21-CR-678 |
| v. | : | 18 U.S.C. §§ 111(a)(1) and (b) |
| GREGORY NIX, | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, **GREGORY NIX,** with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020

Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.  Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Nix's Participation in the January 6, 2021, Capitol Riot*

8.  The defendant, Gregory Nix lives in Alabama. The defendant traveled from his home in Alabama to Washington, D.C., to protest the results of the 2020 Presidential Election. On January 6, 2021, the defendant physically assaulted an officer guarding an entrance to the U.S. Capitol and entered the building.

9.  The defendant entered the U.S. Capitol on the east side of the building. The defendant spent time in the crowd on the east side of the U.S. Capitol building, observing members of the crowd confronting law enforcement as police officers tried to keep the crowd away. The defendant eventually went up to the East House Doors located at the Southeast side of the Capitol Building at approximately 2:21 P.M. and attempted to breach the East House Doors by banging the end of a white flagpole against the door. The defendant was on restricted grounds at this time.

10. At approximately 2:23 P.M. the defendant began to verbally engage with U.S. Capitol Police Officers who arrived to stand guard in front of the East House doors.

11. At approximately 2:27 P.M. the defendant physically assaulted an identified U.S. Capitol Police Officer ("Victim 1") with the white flagpole that the defendant had in his possession. The flagpole had a yellow Gadsden flag, with a "Don't Tread on Me" logo attached to it.

12. The defendant used the flagpole with the intent to commit bodily injury. The defendant hit Victim 1 with the flagpole in the head and thrusted and threw the flagpole at Victim 1. Victim 1 suffered bodily injury as a result of the defendant hitting him over the head with the white flagpole.

13. At approximately 2:30 P.M. the officers guarding the East House Doors were overwhelmed by the crowd the defendant was a part of and retreated. The defendant continued to bang on the doors to try to gain entry to the Capitol. The defendant used a black baton to bang against the door. Eventually the doors were opened, and the defendant entered the Capitol Building shortly thereafter along with other members of the rioting crowd. Gregory Nix spent about ten minutes inside the Capitol Building.

14. The defendant's entry into the Capitol disrupted the orderly conduct of government business on January 6, 2021.

15. A search of the defendant's phone was conducted, and it revealed text messages between the defendant and another individual known to the United States Attorney. In one of the text messages, the defendant stated "I have no problem with tar and feathering" when the individual he was conversing with commented that January 6 may get violent.

### *Elements of the Offense*

16. Gregory Nix knowingly and voluntarily admits to all the elements of Assaulting, Resisting or Impeding Certain Officers Using a Dangerous Weapon and Inflicting Bodily Injury on Certain Officers. Specifically, the defendant admits that on January 6, 2021, he forcibly assaulted Victim 1, a U.S. Capitol Police Officer with a dangerous weapon. The defendant admits that the assault was done voluntarily and intentionally, and that the assault resulted in bodily injury. At the time of the assault, Victim 1 was doing what he was employed by the federal government to do.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Christopher M. Cook
Christopher M. Cook
Assistant United States Attorney
KS Bar No. 23860

## DEFENDANT'S ACKNOWLEDGMENT

I, Gregory Nix, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10/7/2022

Gregory Nix
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10/7/22

Linsey Davis, Esq
Attorney for Defendant